JOHNSTON *v.* KING.

CONTRACTS—CONSIDERATION—PATENT RIGHTS—SPECIFIC PERFORM-
ANCE.

> Defendants, the owners of certain patents on carpet sweepers,
> entered into a contract with complainant J., whereby they
> were to convey to him an interest in the patents, "and all
> improvements thereon," in consideration of his organizing a
> corporation with sufficient capital to manufacture the
> sweepers. The assignment was to be placed in escrow, and
> delivered on satisfactory performance of the contract on his
> part; and to the corporation, when organized, the parties
> were to convey the patents and improvements in exchange
> for a specified proportion of its capital stock. A corporation
> was formed, though on somewhat different lines than con-
> templated, and J. and defendants assigned to it the existing
> patents, and stock was issued to them therefor; but the
> original assignment to J. was never delivered. J. failed to
> bring any money into the business, and the company soon be-
> came involved, and its assets were sold on chattel mortgage.
> Subsequently a patent issued to defendants for certain im-
> provements, and J., the corporation, and the purchaser at the
> mortgage sale brought suit to compel a conveyance of the
> patent according to the original contract. *Held*, that the
> bill would not lie, there having been a failure of the consid-
> eration for defendants' agreement.

Appeal from superior court of Grand Rapids; Newn-
ham, J. Submitted April 4, 1901. Decided September
25, 1901.

Bill by William T. Johnston, James Stewart, and the
King Carpet-Sweeper Company against Charles King,
Walter E. Moore, and the Automatic Sweeper Company
for specific performance of contract. From a decree dis-
missing the bill, complainants appeal. Affirmed.

*L. V. Moulton* (*Burlingame & Belden,* of counsel ),
for complainants.

*Judkins & Perkins* and *Stuart & Barker* (*Charles·
E. Ward,* of counsel ), for defendants.

MOORE, J. In March, 1899, William T. Johnston, and James Stewart, for the King Carpet-Sweeper Company, filed a bill in chancery against Charles King and Walter E. Moore in the superior court of Grand Rapids, substantially alleging:

"That on the 20th day of February, A. D. 1897, Charles King and Walter E. Moore entered into a contract with William T. Johnston to organize a joint-stock company, to be known as the King Carpet-Sweeper Company, of the capital stock of which the said Charles King and Walter E. Moore were to receive two-fifths for and in consideration of the assignment to said company of certain American and foreign patents therein named, together with any and all improvements thereon of which they might become possessed, for full particulars of which agreement reference is made to the said contract, a copy thereof being made a part of this bill.

"That the company was duly organized in accordance with said agreement, and the two-fifths of the capital stock of the same turned over and transferred to the said Charles King and Walter E. Moore, and, as your orators are informed and believe, all and every other of the obligations of said contract to be performed on the part of the said William T. Johnston and the King Carpet-Sweeper Company have been so performed in good faith, and in accordance with the terms and conditions of the same.

"That the said Charles King, subsequent to the making of said contract, and acting under the provisions thereof, did claim to invent an improvement in carpet sweepers which is an improvement on the devices shown in the patents enumerated in said contract, and is included in the terms of the said contract under the head of the improvements upon the said patents, which said improvements said Charles King and Walter E. Moore thereby agreed to convey and turn over to the King Carpet-Sweeper Company.

"That on or about the 17th day of May, 1898, the said Charles King made application in due form for a patent of the United States on said alleged invention and improvement, and assigned one-half of the same to the said Walter E. Moore, and thereupon, after due proceedings had, there was issued a patent of the United States, numbered 616,870, and dated December 27, 1898, to the said Charles King and Walter E. Moore, which said patent

describes and claims the said invention and improvement, and which patent, by virtue of the aforesaid contract, they, the said Charles King and Walter E. Moore, are in equity and good conscience in duty bound to assign, set over, and convey to the said King Carpet-Sweeper Company."

The prayer for relief is that the said defendants may be restrained by an injunction from selling or in any wise disposing of the title to the said patent of the United States, No. 616,870, dated December 27, 1898, granted to Charles King and Walter E. Moore; also that said defendants and others may be enjoined from granting any license of any nature to any person or persons claimed and granted under and by virtue of said patent, until the further order of the court.

"That it be decreed that the defendants, and each of them, shall specifically perform the agreement so made and entered into by them as aforesaid with your orators, your orators being ready and willing, and hereby offering, to specifically perform the said agreement in all things on their part and behalf.

"That it be decreed that the defendants assign, convey, and set over unto the said King Carpet-Sweeper Company the entire right, title, and interest in and to the patent of the United States for improvement in carpet sweepers, numbered 616,870, and dated December 27, 1898, and granted to Charles King and Walter E. Moore."

The contract referred to in the bill reads as follows:

"*Whereas*, Charles King and Walter E. Moore are the owners of letters patent number 563,388, issued July 7, 1896, and 575,960, issued January 26, 1897, containing improvements in carpet sweepers, the same having been issued from the patent office at Washington, D. C.; and

"*Whereas*, they are also the owners of letters patent number 257,886, issued October 26, 1896, by the French republic, and letters patent number 14,106, dated June 25, 1896, issued by the kingdom of Great Britain; and

"*Whereas*, said Charles King and Walter E. Moore have this day conveyed to William T. Johnston an undivided one-fifth (1-5) interest in and to said letters patent, and all improvements thereon, for the stated consideration of four thousand (4,000) dollars; and

" *Whereas*, the said William T. Johnston, in payment of the consideration aforesaid, makes the agreements hereinafter set forth to be performed on his part:

" It is therefore mutually agreed between the said Charles King and Walter E. Moore and William T. Johnston that the patents aforesaid, and all improvements thereon, shall be transferred and assigned to a corporation hereafter to be organized, to be known as the King Carpet-Sweeper Company, or by such other name as may be hereafter decided upon; and it is further mutually agreed that, by whatever name said corporation shall be organized under, the name of King shall appear upon the sweepers to be manufactured under the patents aforesaid.

" It is further mutually agreed between the parties hereto that, upon the organization of said company, the patents aforesaid shall be assigned thereto for two-fifths (2-5) of the capital stock to be issued by said company, to be divided between the parties as their interest in said patents shall appear.

"And it is further mutually agreed that the assignment and deed aforesaid to said letters patent from the said Charles King and Walter E. Moore to said William T. Johnston shall be placed in escrow until the satisfactory performance of the covenants and agreements herein specified to be performed by the said Johnston.

" The said William T. Johnston, in consideration of the premises, agrees to organize a joint-stock company under the laws of the State of Michigan, with a capital stock of not less than fifty thousand ( 50,000 ) dollars, of which the parties hereto shall hold two-fifths (2-5), and that he will perfect such organization on or before six months from the date hereof; and, further, that all subscriptions for stock in said company shall be *bona fide*, and the entire amount thereof shall be subscribed by good and responsible parties.

" The said Charles King and Walter E. Moore agree that, on the organization of said company as aforesaid, they will cause to be delivered to said William T. Johnston the deed deposited in escrow as aforesaid; and it is mutually agreed between the parties hereto that, in case of failure on the part of the said William T. Johnston to perfect said organization, the deed aforesaid shall be redelivered to the said Charles King and Walter E. Moore, and by them destroyed."

The answer of Mr. Moore was by his guardian, who alleged the insanity of Mr. Moore, and the inability of

the guardian to learn from him the facts. Mr. King answered fully to the bill, admitting the making of the contract,—

"But denies that it was a lawful and binding contract, by reason of the fraud practiced upon this defendant by the said William T. Johnston at the time of making the same, as hereinafter more fully set forth. He denies that, by the terms of said agreement, said defendants were to assign to the King Carpet-Sweeper Company, when organized, in addition to the patents mentioned therein, any and all improvements thereon of which they might become possessed, as alleged in said paragraph.

"He denies that the King Carpet-Sweeper Company was organized in accordance with said contract and agreement, and he denies that the stock turned over to these defendants on such organization was in accordance therewith. He denies that the obligations mentioned in said contract to be performed by the said William T. Johnston, or any of them, were performed by him, and he avers that they never have been performed. He further avers that the organization of said King Carpet-Sweeper Company was perfected by others, who were interested in said business before the making of said contract with said Johnston, and that such other persons, on their own behalf, and without knowledge of said agreement, and without the material assistance of said Johnston, organized said company, and issued stock to said defendants, upon an altogether different basis than mentioned in said agreement. And he further avers that, in consideration of said Johnston's agreement to secure a certain amount of capital from outside sources to conduct said business, the said Johnston was given a portion of the capital stock issued by said concern, and was made one of the incorporators thereof; but that said Johnston never secured a single dollar of outside capital, nor contributed a single dollar of his own for said stock, or towards the conduct of said business, but, on the contrary, through his manipulation of the affairs of the concern, he became the manager thereof, and from that time forth, and until the winding up of the business of said concern by a sale under chattel mortgage of all its assets, as hereinafter set forth, drew regularly his salary as such manager. He denies that said complainants have in good faith, or in any other way, performed the conditions of said agreement in accordance

with the terms and conditions of the same, as alleged in said paragraph two.

"He admits that, subsequent to the making of said contract, he invented an improvement in carpet sweepers, but he denies that he was acting under the terms of said contract in inventing the same, or that the same is enumerated therein; and he denies that said defendants, by said contract, thereby agreed to turn said invention over to the King Carpet-Sweeper Company, or to any one else, as alleged in paragraph three.

"He admits the filing of an application for a patent on or about May 17, 1898, the assignment of a one-half interest therein to the defendant Walter E. Moore, and the issuing to these defendants of a patent of the United States numbered 616,870, as alleged in the fourth paragraph of said bill; but he denies that said invention belongs to the King Carpet-Sweeper Company, or that these defendants are in equity and good conscience bound to assign, set over, and convey said patent to said concern by virtue of said contract, or for any other reason.

"He denies that he has ever been requested to assign said patent to the King Carpet-Sweeper Company, but avers that he would have refused so to do had any such request been made. And he further avers that these defendants are not now the owners of said patent numbered 616,870, and have not been the owners thereof since the 6th day of February, 1899; that on said date the said defendants, for a valuable consideration, to them in hand paid, duly sold, assigned, and set over to the Automatic Sweeper Company, a corporation organized and existing under and by virtue of the laws of the State of Michigan, all their right, title, and interest in and to said patent numbered 616,870, and that the said Automatic Sweeper Company is now the absolute owner thereof, and was such owner at the time of the commencement of this suit.

"That, at the time said contract was entered into, the said William T. Johnston represented and claimed to these defendants that he had control of at least $50,000 capital, which he could and would secure towards the organization of a company thereafter to be organized to manufacture carpet sweepers under the patents then owned by these defendants, and mentioned in the contract aforesaid, and that he would procure *bona fide* subscriptions to the stock of such corporation to the amount of at least $50,000. But he avers that said Johnston did not at

said time have control of $50,000, or any sum whatever, and that the representations so made to defendants were false and fraudulent, and were intended to and did mislead defendants into signing said contract; all of which they would not have done had they known the truth, which they did not know, but relied wholly upon the representations so made as aforesaid. That said Johnston never secured a single *bona fide* subscriber for stock to the organization afterwards formed. Further, that the assignment and deed mentioned in said contract, left in escrow, to be delivered to said Johnston on the satisfactory performance by him of the covenants and agreements mentioned in said contract, was never called for by said Johnston, and was subsequently redelivered to these defendants on account of the early abandonment by said Johnston of said contract.

"That the organization of the King Carpet-Sweeper Company took place on the 25th day of February, 1897, that being the day on which the articles of association were signed and filed, which was only five days after the making of said alleged contract with said Johnston; that the capital stock of said company was $60,000, divided into 6,000 shares of $10 each, of which these defendants subscribed for and received 1,260 each, the said Johnston 480, John G. Kalmbach 500, and James Stewart 200,— making in all 3,700 shares; that these defendants, together with said Kalmbach and Stewart, had for some time prior to said organization been manufacturing carpet sweepers under the defendants' said patents by virtue of an agreement then existing between them; that by reason of said Johnston's claims and representations, made to said Kalmbach and Stewart as well as to these defendants, that he had control of a large amount of capital, which he could and would bring into said corporation by subscriptions for stock thereafter to be made, 480 shares of the capital stock of said company were issued to him, for which he never paid a single dollar, nor did he ever secure a single dollar to be subscribed for capital stock in said company.

"That, after its organization as aforesaid, said company commenced doing business, and that these defendants were employed by it,—the said Moore as its secretary, and this defendant as its traveling salesman; that the said Johnston took charge of the office as manager; that on or about the 14th day of December, 1897, these defendants, together with said Kalmbach, Stewart, and John-

ston, joined in an assignment of two of the letters patent mentioned in said alleged contract, and an application then pending in the patent office at Washington, to the King Carpet-Sweeper Company, and it then and thereby became the owner thereof; that, soon after such assignment, said King Carpet-Sweeper Company, without the knowledge of this defendant, gave a trust mortgage covering all its assets and property to the said John G. Kalmbach, to secure advances he had made to the company from time to time, which mortgage was subsequently foreclosed, and the entire assets and property of said company sold to the said James Stewart for the sum of $3,600; and this defendant avers, on the statements made by said Stewart subsequent to his alleged purchase, that the said Johnston and Kalmbach became, and are still, joint owners with him of said assets and property.

"That said King Carpet-Sweeper Company exists only in name; that it has absolutely no property, and has not conducted business since the sale aforesaid, which took place in June, 1898; that it practically ceased doing business several months before said last-named date; and that in the month of April, or thereabouts, and after the giving of said chattel mortgage, the services of this defendant and said Moore were dispensed with, and they were discharged, and from that time they had nothing whatever to do with or to say concerning the management of said company, but the same was managed and conducted by the said Johnston, Stewart, and Kalmbach.

"That the procuring of said assignment December 14, 1897, the giving of said chattel mortgage February 1, 1898, the discharge of these defendants in April, 1898, the filing of said mortgage May 28, 1898, the foreclosure of the same, the purchase of all the assets and property by said Stewart, the interest therein of said Johnston and Kalmbach, together with the wrongful manipulation of said business by all three of said parties during the time it was a going concern, all constitute an improper and unlawful effort on the part of said parties, and particularly of the complainant herein, William T. Johnston, to fraudulently dispossess these defendants of their interest in said, company, in all of which they, and particularly the said Johnston, have succeeded; and defendant therefore avers that on account thereof the said Johnston does not come into this court with clean hands, and is not entitled to any relief whatsoever at the hands of this court.

" That on the 27th day of January, 1899, these defendants filed their bill of complaint in the circuit court of the United States for the Western district of Michigan, Southern division, against the above-named James Stewart and the King Carpet-Sweeper Company for infringement of the patent numbered 616,870, so issued as aforesaid to these defendants December 27, 1898, which suit is still pending; and that on April 1, 1899, defendants in said cause, James Stewart and the King Carpet-Sweeper Company, filed their plea therein, containing substantially the same allegations as to title to said patent being in the King Carpet-Sweeper Company as are set forth in the bill of complaint in this cause; and on the same day this suit was commenced in the superior court of Grand Rapids, and a temporary restraining order was issued on the filing of the bill herein, which last suit was commenced, as this defendant verily believes, and therefore avers, for the express purpose of annoying and harassing these defendants, and causing them unnecessary and additional expense, without any just cause whatsoever. And this defendant prays the benefit of this answer in the nature of a cross-bill, and that said complainants may be required to pay such damages as this court may award, in addition to the taxable costs herein, for the unnecessary and malicious prosecution of this suit, and that this defendant may have such other and such further relief in the premises as may be just and equitable under the circumstances."

Upon the coming in of this answer an amended bill was filed, in which William T. Johnston, James Stewart, and the King Carpet-Sweeper Company were complainants. It alleged the making of the agreement of February 20th; that the deed was placed in escrow;—

" That thereupon, and without allowing six months, or any other reasonable time, for the performance on the part of said Johnston of the said agreements, and at the suggestion and urgent solicitation of said King and Moore, on, to wit, the 24th day of February, A. D. 1897, the King Carpet-Sweeper Company was organized, and that then and there the terms and conditions of said contract were modified by mutual agreement and consent, and without objection on the part of said King and Moore, whereby the said company was capitalized at $60,000, divided into 6,000 shares of $10 each, of which the parties to the said

contract (King, Moore, and Johnston) received one-half of the entire capital stock, divided as follows: King and Moore, each, 1,260 shares, and Johnston 480 shares, John G. Kalmbach received 500 shares, and James Stewart received 200 shares; and the remainder of the capital stock, 2,300 shares, was turned over to the said company as treasury stock, to be sold by the said company from time to time, as occasion required, and thereafter was offered for sale by said company as its treasury stock. That at that time, or at any other time, there was never any understanding or agreement to release said King and Moore, or either of them, from any obligation to assign any patent or patents or any invention which they agreed to assign either to said Johnston or to the King Carpet-Sweeper Company.

"That the consideration on which said stock was issued to the respective parties was as follows: For the interests of said King and Moore, the respective interests in the patents and improvements involved in said contract heretofore referred to; for the interest of said Johnston, the one-fifth interest conveyed by and enumerated in the deed in escrow, referred to in said contract; and your orators further show said interests of King, Moore, and Johnston were eventually conveyed to said company by an assignment in writing, dated on or about the 14th day of December, 1897, and signed by the said Charles King, Walter E. Moore, William T. Johnston, John G. Kalmbach, and James Stewart. The interests of said Stewart and Kalmbach were paid for in part by certain property turned in and sold to said company, and the balance paid in by them in cash.

"That on the 9th day of March, 1897, the organization of said company was perfected by adopting the by-laws, and the election of the following officers: James Stewart, president; William T. Johnston, vice-president and manager; John G. Kalmbach, treasurer; Walter E. Moore, secretary; and the election of a board of directors consisting of the above-named officers, together with Charles King.

"That forthwith, upon perfecting the organization of the King Carpet-Sweeper Company, said Charles King was duly employed, under an agreement made, as salesman and inventor for said company, at the salary of $1,200 per year, and that a part of his duties was to invent and perfect carpet-sweeper devices for the use and

benefit of the said company; and that he, the said Charles King, continued to act in said capacity as salesman and inventor until on or about the 10th day of February, 1898, when his services were dispensed with.

"That a short time after the said King was thus employed as aforesaid, to wit, on or about April, A. D. 1897, and during the time thus employed as inventor, the said King did invent and make certain alleged improvements in carpet-sweeper devices, which your orators believe are improvements on the devices shown in the patents heretofore and in said contract enumerated, which said improvements were turned over to the King Carpet-Sweeper Company, to be embodied in the goods made by it; and that said King also acknowledged by word and act the ownership of and title to the said invention to be in the King Carpet-Sweeper Company, and from that time forward never questioned the said title or ownership, or made objection to the use of the said invention by said company, until on or about January, A. D. 1899, although fully advised of its use and its claim to ownership thereof; which said improvements are described in the patent to these defendants numbered 616,870, and dated December 27, 1898.

"That the said King Carpet-Sweeper Company accepted the said invention in good faith as its property, and paid said King his salary in full as salesman and inventor while in its employ; and that it has since made and sold a considerable quantity of carpet sweepers containing and embodying said alleged invention, and continues to make and sell the same.

"That said King, while in the employ of said company, talked and acted in good faith about taking out a patent on said alleged invention for the use and benefit of the King Carpet-Sweeper Company, and excused delay for the reason that he needed time to perfect other features of alleged novelty to accompany the same in the application for patent, notably an improved 'pan dump,' so called.

"That on or about the 17th day of May, 1898, the said King did make application for letters patent of the United States, and did, in violation of the rights of your orators, assign and transfer an undivided one-half interest in and to the same to said Walter E. Moore, and that the said Moore took the same with full knowledge of the rights of your orators in the premises. And your orators further show that the said Charles King, well knowing the prem-

ises and your orators' rights, and acknowledging the same as aforesaid, did neglect to inform your orators, or any of them, of his said application for a patent, or assign the same, as in good conscience bound to do, but caused the patent to issue to himself and the said Moore, the same being No. 616,870, dated December 27, 1898, and thereupon served notice of infringement upon your orators, and brought suit upon the said patent in the United States circuit court for the Western district of Michigan, to the great damage of your orators, and without just cause; and, your orators verily believe, maliciously, and without any right so to do.

" That, under and by virtue of the contract hereinbefore referred to, it was the duty of the said Charles King and his alleged assignee, the said Walter E. Moore, to transfer and assign to your orator the King Carpet-Sweeper Company the aforesaid patent No. 616,870, hereinbefore described; that your orator the said King Carpet-Sweeper Company duly demanded an assignment of the aforesaid patent to said company according to the terms of said contract, but, notwithstanding their duty in that behalf, the said defendants, King and Moore, refused, neglected, and still continue to refuse and neglect, to transfer and assign said patent to the aforesaid King Carpet-Sweeper Company; and your orator the King Carpet-Sweeper Company is informed and believes, and therefore expressly charges, the said company is entitled to have said contract specifically enforced against the defendants, King and Moore, and that they be required to assign said patent, and all improvements thereon, to said company.

" That on or about the 1st day of February, A. D. 1898, the said King Carpet-Sweeper Company did make and execute a trust mortgage in good faith, to secure *bona fide* creditors, to John G. Kalmbach, and that said mortgage covered and included the said alleged invention, with the knowledge and consent of the defendants herein; and your orators further show that said mortgage was duly foreclosed, and the property covered thereby lawfully sold, for a good and valuable consideration, to James Stewart, one of the complainants herein, whereby he became the equitable and lawful owner of the invention in controversy, and the patent thereon; and your orators further show that the making of said mortgage was with the full knowledge and consent and connivance of the said defendants, and in good faith as between all parties concerned.

"Your orators further show, upon information and belief, that the said defendants, further conspiring to defraud your orators of their rights and title in and to said invention, and in and to said letters patent therefor, are conspiring to sell, assign, and convey said patent and improvements, or to make license, to parties unknown to your orators; that they fear," etc.; and have prayed for the same relief substantially as prayed in the first bill.

The answer of defendant Moore was made by his guardian, and was substantially the same as was made to the first bill. In addition to the allegations contained in his first answer, defendant King set up certain proceedings had in a suit pending in the United States court, and alleged that the defendants, in February, 1899, had assigned patent No. 616,870 to the Automatic Sweeper Company. The Automatic Sweeper Company was made a party defendant. The testimony was taken in open court. It is very voluminous. After hearing it all, the circuit judge dismissed the bill of complaint.

It would not profit any one to recite in detail the testimony. It appears from the record that prior to February 20, 1897, Charles King had obtained patents for certain improvements in carpet sweepers, and had then pending certain applications for further improvements. He had assigned to Walter E. Moore an interest in these patents and the applications. King and Moore had employed these improvements in the manufacture of some sweepers, under a contract with Mr. Kalmbach and Mr. Stewart. They had first agreed to make a thousand sweepers, and, when these were finished, had decided to buy material, and go on and make another thousand. A short time before February 20, 1897, an item appeared in the papers stating that William T. Johnston was about organizing a stock company for the manufacture of carpet sweepers. Conversations followed between Johnston, King, and Moore, which led to the making of the written contract of February 20, 1897.

It is impossible to read this contract in the light of the circumstances without concluding that, when King and

Moore signed it, they supposed 'Johnston could bring into the company that was to be organized $30,000 of *bona fide* subscriptions, which would enable the business to go on until it should be established. There is nothing in the record which would warrant the inference that King and Moore ever consented to such a modification of this contract as would bind them to make these conveyances, and at the same time release the obligation to bring into the company capital sufficient to enable it to do business. A company was organized, but it was not organized along the lines of the agreement. The contract which was left in escrow was never delivered. A company was organized with a capital of $60,000. Four hundred and eighty shares of stock were assigned to Mr. Johnston, for which he paid nothing. He says it was assigned to him because of his being an experienced man, who had been with the Bissell Carpet-Sweeper Company a good many years. Mr. King says it was assigned to him because he represented that he could bring to the company a large amount of capital stock. The action of King and Moore is inexplainable except upon the theory that the organization of this company would result in obtaining sufficient capital to go on with the business. There was $23,000 of treasury stock. It remained unsold. The company was soon in debt. In January, 1898, while Mr. King was in New York, a trust mortgage was given to Mr. Kalmbach. In February Mr. Moore and Mr. King were discharged from the service of the company. In June the mortgage was foreclosed. The property was bid in by Stewart for $3,600, no part of which he has yet ever paid. And the complainants now ask a decree as prayed for in the bill. It is not worth while to go more into detail in relation to this transaction. It is sufficient to say that we agree with the circuit judge that, under the proofs in the case, the bill of complaint ought to be dismissed.

The decree of the court below is affirmed, with costs.

MONTGOMERY, C. J., HOOKER and GRANT, JJ., concurred. LONG, J., did not sit.